UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JM McCORMICK COMPANY, INC., | ) | |
|     Plaintiff, | ) | |
| | ) | 1:05-cv-00146 RLY/TAB |
|   vs. | ) | |
| | ) | |
| INTERNATIONAL TRUCK & ENGINE | ) | |
| CORPORATION, | ) | |
|     Defendant, | ) | |
| _____ | ) | |
| | ) | |
| INTERNATIONAL TRUCK & ENGINE | ) | |
| CORPORATION, | ) | |
|     Counterclaim Plaintiff, | ) | |
| | ) | |
|   vs. | ) | |
| | ) | |
| JM McCORMICK COMPANY, INC., | ) | |
|     Counterclaim Defendant. | ) | |

**ENTRY ON DEFENDANT/COUNTERCLAIM PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS RELATING TO THE PERFORMANCE OF TREATED PLYWOOD IF FOUND NOT TO BE COMPULSORY**

Plaintiff/Counter-Defendant JM McCormick Company, Inc. filed suit against Defendant/Counter-Plaintiff International Truck & Engine Corporation, alleging breach of contract. International's Third Amended Answer includes the following counterclaims: breach of contract (Count I), fraud (Count II), and breach of implied warranty (Count III). International brought this motion to dismiss its own counterclaims relevant to treated plywood, specifically paragraph 51 of Count I and Count III in its entirety. For the following reasons, International's motion is **denied**.

**I.     Background**

In September 2000, McCormick and International entered into a five year Comprehensive Supply Agreement covering the sale of plywood products for use in International's bus production facilities beginning October 1, 2000 and ending September 30, 2005. (Complaint, Ex. A). The Agreement provided that McCormick would issue a $125,000 credit to International, that price reductions were to be given at yearly intervals, and that price adjustments would be based on an industry publication. (Complaint, Ex. A). International also required that McCormick abide by certain quality requirements and agree to remain competitive in price and performance. (Complaint, Ex. A).

In 2002, International informed McCormick via e-mail that International would be making a switch from untreated plywood to treated plywood in its buses. (International's Brief in Support of Motion to Dismiss, Ex. D). It is disputed whether this e-mail was a separate and distinct contract for treated plywood or whether the Agreement would cover any and all plywood products produced by McCormick for International. International found quality problems with the first shipment of the new treated plywood, causing downtime and delay in daily bus production. (Defendant/Counter-Plaintiff Third Amended Answer, ¶ 22). To compensate for the delay, International issued a charge-back to McCormick of $47,127.96. (Complaint, Ex. B).

From this point on, many of the facts are in dispute, but generally revolve around disagreements over pricing, competitiveness, and the quality of the treated plywood. International informed McCormick that it would no longer be purchasing plywood

products from them in a series of e-mails in May and July 2003. (Complaint, Ex. D). McCormick ceased production for and delivery to International in early August 2003 after filling the final requested shipment. (Complaint, ¶ 33).

McCormick initiated this breach of contract action in January 2005, citing an allegedly unjustified charge-back and wrongful termination as the cause of the breach. In April 2006, International filed this motion to dismiss paragraph 51 of Count I and the entirety of Count III of its Counterclaim. Count I alleges generally that McCormick failed to comply with certain certification requirements, install proper communication systems, and provide the quality of product agreed upon in the Agreement and therefore was in breach of the Agreement. Paragraph 51 of Count I states, "McCormick breached its contract with International by failing to protect, defend, hold harmless and indemnify International against claims made relating to the treated plywood floors." Count II, alleging fraud, claims McCormick made material misrepresentations as to the quality of the products, and damages were incurred by set-backs relating to the inferior plywood. The breach of implied warranty claim, alleged in Count III, references the merchantability of the plywood and the plywood's fitness for a particular purpose. International argues that the counterclaims in paragraph 51 and Count III are permissive rather than compulsory, and that dismissal of these claims is in the best interest of judicial economy.

**II.     Motion to Dismiss Standard**

Rule 13 requires that a pleading include "any claim . . . the pleader has against the

opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." Fed. R. Civ. P. 13(a). Failure to bring compulsory counterclaims bars those claims from being brought as a subsequent independent action. *Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 469 n.1 (1974). A claim not arising out of the same transaction or occurrence is permissive in nature and need not be brought, but may be included to dispose of all claims in one suit. Fed. R. Civ. P. 13(b); *Baker*, 417 U.S. at 469 n.1. Permitting or denying the voluntary dismissal of an action is at the discretion of the court. Fed. R. Civ. P. 41(a)(2); *Tolle v. Carroll Touch, Inc.*, 23 F.3d 174, 177 (7th Cir. 1994); *Fed. Deposit Ins. Corp. v. Knostman*, 966 F.2d 1133, 1142 (7th Cir. 1992).

**III.   Analysis**

    **A.   Compulsory or Permissive Counterclaims**

Courts have adopted the "logical relationship" test as a means of understanding the same transaction or occurrence requirement of Rule 13. *Warshawsky & Co. v. Arcata Nat'l Corp.*, 552 F.2d 1257, 1261 (7th Cir. 1977). This test is rooted in the idea that the purpose of Rule 13 "is to prevent multiplicity of actions" and resolve all conflicts arising out of common matters in a single lawsuit. *Id.* Therefore, the word "transaction" should be construed liberally to encompass a "series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship," to avoid multiplicity of suits. *Id.* While there are no formal requirements for a "logical

relationship," courts "should consider the totality of the claims, including the nature of the claims, the legal basis for recovery, the law involved, and the respective factual backgrounds." *Burlington N. R.R. Co. v. Strong*, 907 F.2d 707, 711 (7th Cir. 1990).

International has two rationales for its argument that the counterclaims are permissive. First, International argues that the claims rest on different factual allegations. The distinction between treated and untreated plywood arguably results in the claims having separate background facts and possibly involving different parties. According to International, the claims are, therefore, permissive.

McCormick's breach of contract claim does not make a distinction between treated and untreated plywood, but is seeking relief for breach of the entire contractual relationship including the charge-back, termination of the Agreement, and lost profits. (Complaint, ¶¶ 36-38). The Agreement referred to by McCormick is the original five year Comprehensive Supply Agreement made in 2000 and, according to McCormick, covers the switch to treated plywood in 2002. The charge-back is related to a delay in production at International's facilities due to a shipment of allegedly inferior treated plywood product. (Complaint, Ex. B). Termination of the contract and lost profits refer to the contractual relationship as an ongoing relationship regardless of the specific plywood product produced for International.

In *Burlington* and *Valencia*, the counterclaims were permissive because the nature of the claims differed or the claims were governed by different bodies of law. *Burlington*, 907 F.2d at 712 (finding that actions were based on separate transactions where the

original action was grounded in tort law and the counterclaim was grounded in the provisions of a healthcare benefit agreement); *Valencia v. Anderson Bros. Ford*, 617 F.2d 1278, 1292 (7th Cir. 1980) (holding that lender's counterclaims on a private loan contract were permissive to borrower's federal claim involving the same loan).  Here, the nature of the claims is such that they all arise out of the contractual relationship and are governed by the same body of law.  The claims are sufficiently related that they would most likely have common facts and witnesses, despite the possibility of additional parties.  There is little merit to International's claim that different factual allegations make the claims permissive.

Second, International reasons that the existence of two contracts allows the claims to be brought separately.  The matter of whether there were one or two contracts is disputed, thus this line of reasoning cannot justify dismissal.  Therefore, the claims in dispute are most likely compulsory.

      **B.**     **Judicial Economy**

Even if the claims are permissive, Rule 41 allows the court to use its discretion in granting voluntary dismissals.  Fed. R. Civ. P. 41(a)(2).  The purpose of Rule 13 is to promote judicial economy through the resolution of all conflicts arising out of common matters in a single lawsuit.  *Warshawsky*, 552 F.2d at 1261.

Whether there are one or two contracts for plywood products, it is most efficient to try all of the claims based on the contractual relationship in one action.  As McCormick states, the claims are likely to have evidence in common and witnesses with overlapping

information.  The claims are sufficiently related that common sense compels the claims to be tried together, as they have been brought, for the purpose of judicial economy.[1]  International's counterclaims are sufficiently similar to seem compulsory, but regardless of whether they are compulsory or permissive, judicial economy would best be served if the claims are all brought in one action.

### IV.    Conclusion

For the reasons stated above, the court **DENIES** Defendant/Counter-Plaintiff International's Motion to Dismiss Counterclaims Relating to the Performance of Treated Plywood (Docket # 48).

**SO ORDERED** this 13th day of July 2006.

_____
RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Electronic Copies to:

John M T Chavis II
LOCKE REYNOLDS LLP
jchavis@locke.com

---

[1] In its brief, International discusses the possibility that this court may not have personal jurisdiction over a potential defendant.  (*See* International's Brief in Support of the Motion to Dismiss at 7-8).  This does not appear to be the case (*See* McCormick's Brief in Opposition at 7-8; Ex. D), but there is insufficient information for a decision on the matter.

Peter S. Kovacs
STEWART & IRWIN
pkovacs@silegal.com

Nicholas C. Pappas
LOCKE REYNOLDS LLP
npappas@locke.com

Mary F. Schmid
STEWART & IRWIN
mschmid@stewart-irwin.com